UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRANDON A. THOMAS,

    Plaintiff,

v.                                            Case No. 20-cv-219-pp

ANDREW LEHMAN,
WCI STAFF STEPHENSON,
and WCI STAFF DORN,

    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), GRANTING MOTIONS TO SUPPLEMENT COMPLAINT (DKT NOS. 8, 13), DENYING MOTION FOR TEMPORARY RESTRAINING ORDER (DKT NO. 9) AND SCREENING COMPLAINT (DKT. NO. 1)**

Plaintiff Brandon A. Thomas, a former inmate at Waupun Correctional Institution who is representing himself, filed a complaint alleging that the defendants violated his civil rights under 42 U.S.C. §1983. Dkt. No. 1. Since filing the complaint, he has filed two motions to supplement the complaint, dkt. nos. 8, 13, and a motion for a temporary restraining order, dkt. no. 9. This order resolves the outstanding motions, including the plaintiff's motion to proceed without prepaying the filing fee, and screens the complaint.

**I.    Motion to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to let an incarcerated plaintiff proceed with his case without prepaying

the filing fee if he meets certain conditions. One of those conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On February 13, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $16.96 by March 5, 2020. Dkt. No. 5. On March 4, 2020, the court received $17.00. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will allow him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II. Screening the Complaint (Dkt. No. 1)**

    A.    Federal Screening Standard

Under the Prison Litigation Reform Act (PLRA), the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case

2

under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

    B.    Allegations in the Complaint

The plaintiff has sued Andrew Lehman, C.O. Stephenson and C.O. Dorn,

3

Case 2:20-cv-00219-PP   Filed 10/30/20   Page 3 of 15   Document 15

staff members at Waupun Correctional Institution. Dkt. No. 1 at 1, 2.

The plaintiff alleges that on July 20, 2020 (a Saturday night), he was brought back to the restricted housing unit ("RHU") from "North Program." Id. at ¶12. He was placed in Cell B115 on Lower B-Range. Id. at ¶13. Two days later, he was given a "90-DS" disposition to remain in RHU. Id.

On July 24, at 6:15 a.m., the plaintiff alleges that defendant Dorn was making rounds on Lower B-Range passing out morning medication. Id. at ¶¶14-15. The plaintiff says that Dorn stopped in front of Cell B104 and said, "Your [sic] a gay." Id. at ¶15. The plaintiff alleges that Dorn continued down the range to Cell B117 and said "put pressure on Mr. Thomas. He's a bi guy. . . . It's not his fault the guy's mom is a sex slave." Id. Dorn then went to Cell B120 and Cell B121, which were right next door to each other, and said, "put pressure it's the cult." Id. The plaintiff alleges that as Dorn was leaving Lower B-Range with the mediation cart, he stated, "Sell your soul, and you won't get pressured." Id. The plaintiff notes that Dorn "was wearing his (BWC) Body Watch Cam that controls video and audio to support these facts." Id.

The plaintiff next asserts that on a different date in July 2019[1] at 11:00 a.m., defendant Dorn was again making rounds on Lower B-Range passing out

---

[1] It looks to the court as if the date the plaintiff wrote for this event was July 16, 2019. Dkt. No. 1 at ¶16. That date does not make sense, however—the plaintiff says that he did not return to Lower B-Range of the RHU until July *20*, and the events he described happened on Lower B-Range of the RHU. Perhaps the first digit is a "2," which would make the date July 26, and the court is misreading the plaintiff's handwriting.

4

afternoon medication. Id. at ¶¶16-17. The plaintiff says that Dorn stopped in front of Cell B104 and said, "put pressure on Mr. Thomas down there he is a sex offender." Id. at ¶17. The plaintiff states that Dorn continued to Cell B117 and said, "The reason why he's getting pressured because the cult wants his soul." Id. The plaintiff says that Dorn again was wearing his "body watch cam." Id.

The plaintiff contends that on August 1, 2019 at 4:00 p.m., defendant Stephenson was handing out medication to the Lower B-Range inmates. Id. at ¶¶6-7. The plaintiff asserts that Stephenson approached Cell B101 "and 'pressure Mr. Thomas he's a bisexual guy, he's waiting to get released and go to a gay bar." Id. at ¶8.

The plaintiff asserts that the next day (August 2), around 2:19 p.m., Stephenson was taking the Lower B-Range inmate to outside recreation. Id. at ¶¶ 9-10. The plaintiff says that "during that time, Stephenson said, "You mad because cult is pressuring you and your [sic] a bisexual guy you shouldn't showed." Id. at ¶11. Stephenson then laughed at the plaintiff and said, "Your [sic] gonna go to a gay bar." Id.

The plaintiff claims that on August 29, 2019, around 9:30 a.m., Dorn yelled out, "You and your mom are sex offenders. It's a curse." Id. at ¶18. The plaintiff says that Dorn made a statement directed at the plaintiff, stating "your [sic] not going to (GP) General Population there's a hit on you." Id. at ¶19. The plaintiff alleges that Dorn was wearing the "body watch cam" during this

5

incident. Id. at ¶¶18-19.

The plaintiff states that on October 11, 2019, defendant Lehman was working second shift on the Lower C-Range. Id. at ¶20. The plaintiff alleges that about 6:00 p.m., Lehman was "walking the phone to inmate's cell," when he stopped at Cell C102 and C103 and said that "Mr. Thomas is a gay bear." Id. at ¶21. Then Lehman went to Cell C106 and said, "put pressure on Thomas. He's a bi-guy." Id. The plaintiff says Lehman was wearing a body watch cam. Id.

The plaintiff says that the defendants verbally abused him, that the abuse "constituted the tort of defamation to the plaintiff" and that it violated the Eighth Amendment. Id. at ¶24. He says the defendants engaged in a campaign of harassment against him, that staff retaliated by telling others to participate in verbal abuse and that this violated the Eighth Amendment. Id. at ¶25. He indicates that the defendants threatened to continue the verbal harassment if he continued to "exercise [his] grievance procedures for issues involving each defendant." Id. at ¶26. He says this threatened to inhibit his First Amendment rights. Id.

The plaintiff seeks a declaratory judgment that defendants violated his constitutional rights. Id. at 7. He also seeks an injunction requiring the defendants to no longer have contact with him and to stop verbally harassing him. Additionally, the plaintiff wants a transfer to a different institution. Id. Finally, he seeks compensatory damages in the amount of $30,000 per

6

defendant and punitive damages in the amount of $2,500 per defendant. Id.

    C.    <u>Analysis</u>

The plaintiff claims that the defendants violated his Eighth Amendment rights and unlawfully retaliated against him. The court first will analyze the plaintiff's retaliation claim. To state a claim of retaliation in violation of the First Amendment, a plaintiff must show that "(1) [he] engaged in an activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." <u>Hawkins v. Mitchell</u>, 756 F.3d 983, 996 (7th Cir. 2014). The plaintiff has not alleged that he engaged in activity protected by the First Amendment that resulted in the defendants' verbal harassment. While he says that the defendants threatened to keep harassing him if he "continued to exercise his grievance procedures," he does not allege that he previously filed grievances against these defendants that resulted in harassment. Nor is it clear that being subjected to verbal harassment would be a "deprivation likely to deter" him from filing grievances. The court will not allow the plaintiff to proceed on a retaliation claim against the defendants.

"The Eighth Amendment prohibits cruel and unusual punishments that involve the unnecessary and wanton infliction of pain." <u>Lisle v. Welborn</u>, 933 F.3d 705, 716 (7th Cir. 2019). This "prohibition also includes acts 'totally without penological justification.'" <u>Id.</u> (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730,

7

737 (2002)). While the Seventh Circuit has held that "standing alone, simple verbal harassment does not constitute cruel and unusual punishment," <u>Dewalt v. Carter</u>, 244 F.3d 607, 612 (7th Cir. 2000), "[t]he proposition that verbal harassment cannot amount to cruel and unusual punishment is incorrect." <u>Beal</u>, 803 F.3d at 357.

In <u>Beal</u>, the Seventh Circuit advised courts to focus on whether the harassment was "fleeting" or "too limited to have an impact." <u>Id.</u> at 358. The <u>Beal</u> court held that a plaintiff could proceed on an Eighth Amendment claim where his §1983 complaint alleged that a male correctional officer made sexual innuendos about him in front of other inmates. <u>Id.</u> at 358-359. The court noted that there were multiple incidents of harassment, and that by implying the plaintiff was gay, the defendant's statements increased the plaintiff's risk of sexual assault by fellow inmates and his risk of psychological harm, which meant that the verbal harassment had an impact. <u>Id.</u>

The plaintiff's allegations support an Eighth Amendment claim. Like the statements in <u>Beal</u>, the defendants' alleged statements were sexual in nature, commenting on the plaintiff's sexuality. They were made over a four-month period, within hearing of other inmates for the apparent purpose of inciting the inmates to "put pressure" on the plaintiff. Dkt. No. 1 at ¶¶6-21. The defendants' alleged statements pose the same concerns and risks as the statements in <u>Beal</u>—because they focus on the plaintiff's sexuality, they increased the plaintiff's risk of harm (physical or psychological) from other

8

inmates. The court will allow the plaintiff to proceed on an Eighth Amendment cruel and unusual punishment claim against defendants Lehman, Stephenson and Dorn.

### III. Motions to Supplement the Complaint (Dkt. Nos. 8, 13)

The plaintiff filed two motions to supplement his complaint. Dkt. Nos. 8, 13. The first motion asks the court to allow the plaintiff to add a defendant to the original complaint. Dkt. No. 8. He attached to this motion a proposed "supplemental" complaint, which alleges that in January and February 2020—including two dates after the plaintiff filed his original complaint—the captain of the RHU failed to keep Stephenson away from the plaintiff. Dkt. No. 8-2. The second motion claims that the original complaint named the captain as a defendant (which it did not). Dkt. No. 13. The plaintiff attached to this motion another proposed supplemental complaint, which made allegations against the captain based on events occurring in April 2020. Dkt. No. 13-1.

Federal Rule of Civil Procedure 15(d) states that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." A district court has "substantial discretion" to decide whether to allow a plaintiff to broaden the lawsuit to include events that occurred after the date the original complaint was filed. Chi. Reg'l Council of Carpenters v. Vill. of Schaumburg, 644 F.3d 353, 356 (7th Cir. 2011).

9

It was proper for the plaintiff to seek leave to supplement his complaint, because the claims he seeks to add occurred after he filed the original complaint. But the court cannot allow the plaintiff to proceed piecemeal in three different pleadings. The court will grant the motions to supplement the complaint but will require the plaintiff to *amend* his complaint to state all the claims he wants to assert against all four defendants *in a single document*.

If the plaintiff wishes to amend his complaint to incorporate his claims against the captain, he must file the amended complaint in time for the court to receive it by the end of the day on December 11, 2020. If the plaintiff decides that rather than amending the complaint, he wants to proceed only against the original three defendants on the Eighth Amendment claim, he may notify the court in writing of that choice in time for the court to receive the notification by the end of the day on December 11, 2020.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a blank complaint form and instructions. The

10

plaintiff must write the word "Amended" at the top of the first page of the form, in front of the word "Complaint." He must list the case number—20-cv-219—in the space provided for the case number on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He must use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and *must be complete in itself*; the plaintiff may not refer the court back to his original complaint. He must allege in the amended complaint all the facts that relate to all the defendants he is suing, so that there is a single pleading that relates all the plaintiff's claims.

The court also advises the plaintiff that he cannot bring unrelated claims against different defendants in the same case. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). A plaintiff may join multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. Fed. R. Civ. P. 20(a)(2); George, 507 F.3d at 607; Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012) (joinder of multiple defendants in one case "is limited to claims arising from the same transaction or series of

11

related transactions"). For example, a plaintiff may make one claim against Defendants A, B, C and D and an unrelated claim against Defendants A, B and E. If the plaintiff wants to proceed with both claims in the same case, Rules 18 and 20 require that he dismiss defendants C and D from the first case and defendant E from the second case. That way, the same "core" defendants (A and B) are common to both claims. Under Rule 18, the plaintiff can join as many claims as he wants against an opposing party, but in doing so, he still must comply with Rule 20.

**IV. Motion for Preliminary Injunction/Temporary Restraining Order (Dkt. No. 9)**

The plaintiff has asked the court for a temporary restraining order and a preliminary injunction.[2] Dkt. No. 9. He seeks to enjoin the defendants from retaliating against him, making further threats or verbally abusing him. Dkt. No. 9 at 2. In the brief supporting the motion, he reiterates the allegations contained in his original complaint and his supplemental complaints.

A preliminary injunction or temporary restraining order is "an extraordinary remedy" that a court may grant only after a "clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, 555 U.S. 7. 22 (2008). To make such a showing, the plaintiff must show that 1) his underlying case has some likelihood of success on the merits; 2) no adequate

---

[2] The plaintiff's "motion" is titled "Order to Show Cause and Temporary Restraining Order." Dkt. No. 9. The supporting brief, however, indicates that the plaintiff is seeking a temporary restraining order and preliminary injunction. Dkt. No. 11.

12

remedy at law exists; and 3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). If the plaintiff makes that showing, the court must balance the harm to each party and to the public interest caused by granting or denying the injunction. Id. See also Korte v. Sebelius, 735 F.3d 654 (7th Cir. 2013); Cooper v. Salazar, 196 F.3d 809 813 (7th Cir. 1999). Injunctive relief is appropriate only if it seeks relief from actions similar to the plaintiff's claims in the underlying case. See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994); Neuroscience, Inc. v. Forrest, No. 12-cv-813, 2013 WL 6331348 at *1 (W.D. Wis. Dec 5, 2013).

The plaintiff has not demonstrated that he would suffer irreparable harm without an injunction. At this early stage in the case, the court has no evidence to allow it to determine whether the plaintiff has a reasonable likelihood of success on the merits of his claims. The standard for verbal harassment as cruel and unusual punishment is extremely narrow. Lisle, 933 F.3d at 719. In Beal, the Seventh Circuit acknowledged that regardless of whether the verbal harassment is "[s]imple or complex, most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment." 803 F.3d at 358. While the Beal court allowed the complaint to survive screening, the plaintiff's allegations just tipped the scales toward a potentially viable Eighth Amendment claim. The plaintiff here has alleged enough to warrant discovery to determine whether the verbal harassment was as damaging as he alleged. Given the applicable Eighth Amendment standard, however, his allegations

13

alone are not enough to justify injunctive relief.

Nor has the plaintiff alleged that the defendants' alleged verbal abuse subjects him to a risk of physical danger, such that if the court did not issue the injunction, his physical safety could be at risk. The court will deny the plaintiff's motion for a temporary restraining order and a preliminary injunction.

**V.      Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **GRANTS** the plaintiff's motions for leave to supplement his complaint. Dkt. Nos. 8, 13.

The court **DENIES** the plaintiff's motion for a temporary restraining order and preliminary injunction. Dkt. No. 9.

The court **ORDERS** that by the end of the day on **December 11, 2020**, the plaintiff either must file an amended complaint that complies with the instructions in this order or file a written notice informing the court that he wishes to proceed with his original complaint. The plaintiff must file one or the other of these documents in time for the court to *receive* it by the end of the day on December 11, 2020. If the plaintiff files an amended complaint, the court will screen it and set a date for the defendants to respond. If he notifies the court that he chooses not to amend, the court will set a deadline for the defendants to respond to the original complaint.

14

The court **ORDERS** that plaintiff shall pay the **$333.00** balance of the filing fee as he is able.

The court **ORDERS** that the plaintiff must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 30th day of October, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**