UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRANDON A. THOMAS,

      Plaintiff,

    v.                             Case No. 20-cv-219-pp

ANDREW LEHMAN, MARCO STEPHENSON
and JACOB DORN,

      Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 25) AND DISMISSING CASE

Plaintiff Brandon A. Thomas, a previously incarcerated person who is representing himself, is proceeding under 42 U.S.C. §1983 on Eighth Amendment claims against staff members at Waupun Correctional Institution. The defendants have moved for summary judgment. Dkt. No. 25. The plaintiff has not opposed the motion. The defendants are entitled to judgment as a matter of law and the court will grant that judgment and dismiss the case.

## I.    Procedural Background

The plaintiff filed this lawsuit on February 12, 2020. Dkt. No. 1. At that time, he was incarcerated at Waupun Correctional Institution. Id. at ¶2. Twice before the court had an opportunity to screen the complaint, the plaintiff moved to supplement it with a new claim against an additional defendant, dkt. nos. 8, 13, and requested a temporary restraining order or preliminary injunction, dkt. no. 9. Also before the court screened the plaintiff's complaint, the plaintiff notified the court that he would be released onto extended supervision on September 22,

Case 2:20-cv-00219-PP   Filed 12/31/21   Page 1 of 21   Document 33

2020, and provided a new address in Kenosha, Wisconsin. Dkt. No. 14;
see https://appsdoc.wi.gov/lop/home.do (DOC #00349121).

On October 30, 2020, the court screened the complaint and allowed the plaintiff to proceed on an Eighth Amendment claim against defendants Andrew Lehman, Marco Stephenson and Jacob Dorn. Dkt. No. 15 at 8–9. The court granted the plaintiff's motions to supplement his complaint because they alleged new claims that occurred after he filed the original complaint. Id. at 10. The court noted, however, that the plaintiff could not "proceed piecemeal in three different pleadings." Id. The court ordered the plaintiff "to *amend* his complaint to state all the claims he wants to assert against all four defendants *in a single document.*" Id. (emphases in original). The court ordered the plaintiff to file the amended complaint incorporating all his claims by December 11, 2020. Id. The court advised the plaintiff that if he preferred to proceed on his Eighth Amendment claims only, or if he did not file an amended complaint by the December 11, 2020 deadline, the court would allow him to proceed only on the Eighth Amendment claims from his original complaint. Id. at 10, 14. Finally, the court denied the plaintiff's motion for a preliminary injunction or temporary restraining order. Id. at 13–14.

The December 11, 2020 deadline passed, and the plaintiff did not file an amended complaint. Consistent with the screening order, the court allowed the plaintiff to proceed against only defendants Lehman, Stephenson and Dorn and only on the Eighth Amendment claim in his original complaint. Dkt. No. 16. The court ordered those defendants to respond to the original complaint. Id. at 2.

On February 19, 2021, after the defendants had answered the complaint, the court entered a scheduling order setting deadlines for discovery and dispositive motions. Dkt. No. 20. That order advised the plaintiff "that it [was] his responsibility to promptly notify the court if his address change[d] again." Id. at ¶4. The court warned the plaintiff that his "failure to keep the court advised of his whereabouts may result in the court dismissing his case without further notice." Id.

On July 2, 2021, the court received notice from the plaintiff that he was no longer at the address in Kenosha and that he was at the Kenosha County Detention Center. Dkt. No. 21. The same day, the court received a letter from the plaintiff noting that the defendants asked to depose him on July 12, 2021. Dkt. No. 22. He stated that the defendants had mailed the deposition notice to his previous address and asked them to resend the notice to him at the Kenosha County Detention Center. Id. (It is not clear how the plaintiff knew that the defendants had sent the deposition notice to him at his previous address.) On July 29, 2021, the court received from the plaintiff yet another notice of an address change, this one identifying his address as an apartment on 120th Court in Pleasant Prairie, Wisconsin. Dkt. No. 23. That notice is the last time the court heard from the plaintiff.

On September 1, 2021, the defendants filed a motion for summary judgment. Dkt. No. 25. The next day, the court issued an order requiring the plaintiff to respond to the defendants' motion by October 1, 2021, as Civil Local Rule 56(b)(2) requires. Dkt. No. 29. The October 1 deadline passed, and the court did not receive a response to the defendants' motion. The court noted, however,

that at some point "the address the court has on file for the plaintiff changed to 11205 Old Green Bay Road, Pleasant Prairie, Wisconsin, 53158." Dkt. No. 32 at 2. The plaintiff had not filed a written notice of that new address, nor was there a docket entry showing that the plaintiff called the court to provide this new address. Id. The court concluded it was possible the previous order telling the plaintiff to respond to the defendants' motion for summary judgment had not reached him. Id.

In the interest of justice, the court sent the defendants' summary judgment motion, their materials in support and the new notice of his obligation to respond to *both* Pleasant Prairie addresses—the one on 120th Court and the one on Old Green Bay Road. Id. The court ordered the plaintiff to respond to the defendants' motion *and* to provide written notice of his current address by November 12, 2021. Id. at 2–3. The court advised the plaintiff that if he did not respond to the defendants' motion, it would "treat the defendants' motion as unopposed, accept all facts asserted by the defendants as undisputed and decide the motion based only on the arguments in the defendants' brief, without any input from the plaintiff." Id. at 3. The court explained that that meant the court "the court likely [would] grant the defendants' motion and dismiss the case." Id. at 4. The court further advised the plaintiff that if he did not provide his current address *in writing* by November 12, 2021, "the court will conclude that the plaintiff has abandoned this lawsuit and may dismiss it without further notice." Id.[1]

_____

[1] The court mailed this order to the plaintiff at both Pleasant Prairie addresses on October 13, 2021, but mistakenly did not docket the order until October 26, 2021. See Dkt. Entry of 10/13/2021.

On October 26, 2021, the order the court had sent to the plaintiff at the 120th Court address was returned to the court as undeliverable. Dkt. No. 30. The same day, defense counsel notified the court that she sent the defendants' summary judgment motion and materials to the plaintiff at the address on 120th Court. Dkt. No. 31. Confusingly, defense counsel reported that those materials were *not* returned to her office as undeliverable. Id. at 1. Defense counsel advised that she received no further communication from the plaintiff about his current address. Id.

The November 12, 2021 deadline has passed, and the plaintiff has not responded to the defendants' motion or disputed the defendants' proposed findings of fact. Nor has he contacted the court to provide a new address. Unlike the order sent the plaintiff at the address on 120th Court, the court's order sent to him at the address on Old Green Bay Road has not been returned as undeliverable.

This is not the first time the plaintiff has filed a case in this court and abandoned the litigation partway through. In Case No. 20-cv-804, the defendants moved for summary judgment on the ground that the plaintiff had failed to exhaust his administrative remedies before filing the lawsuit. Thomas v. Tritt, *et al.*, Case No. 20-cv-804-PP, Dkt. No. 23 at 1 (citing Dkt. No. 14). The plaintiff's response to that motion was due thirty days later—by January 4, 2021—but the court did not receive anything from the plaintiff by that date. Id. at 2. Concerned that the plaintiff had missed the deadline because he was representing himself, the court gave the plaintiff another opportunity to respond to the defendants' motion for summary judgment. Id. The court ordered the plaintiff to respond to

the defendants' motion by the end of the day on March 5, 2021. Id. (citing Dkt. No. 21 at 3–4). That order was sent to the plaintiff at the Kenosha address he provided in that case (and in this one) and was not returned to the court as undeliverable. Id. at 2–3 (citing Dkt. No. 9 (entered Sept. 8, 2020)); see Case No. 20-cv-219, Dkt. No. 14 (entered Sept. 8, 2020). The March 5, 2021 deadline passed without the plaintiff filing a response, so the court granted the defendants' motion and dismissed the case without prejudice. Id. at 3–6.

Under the court's September 2, 2021 order, the court could dismiss this lawsuit based on the plaintiff's failure to provide his current address and to diligently prosecute the case. Dkt. No. 32 at 4; see Civil Local Rule 41(c) (E.D. Wis). Given the changes in the plaintiff's address, however, the court will review the defendants' motion for summary judgment. Because the plaintiff did not respond to that motion or provide his own supporting materials, the court accepts the defendants' proposed facts as true for purposes of this motion. See Civil L.R. 56(b)(4) ("The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment.").

## II.     The Defendants' Motion (Dkt. No. 25)

The plaintiff was an inmate at Waupun at all relevant times. Dkt. No. 27 at ¶1. Defendants Lehman, Stephenson and Dorn were correctional officers at Waupun. Id. at ¶2.

### A.     The Complaint

The plaintiff alleged that the defendants inflicted cruel and unusual punishment on him in violation of the Eighth Amendment. Id. at ¶3; Dkt. No. 1. The plaintiff alleged that during medication pass on July 24, 2019, Dorn stopped

at his cell and said, "Your [*sic*] a gay." Dkt. No. 27 at ¶4 (citing Dkt. No. 1 at ¶¶14–15). He alleged that Dorn told another incarcerated person, "Put pressure on Mr. Thomas he's a biguy," and "It's not his fault the guy's Mom is a sex slave." Id. at ¶5 (citing Dkt. No. 1 at ¶15). He further alleged that Dorn stated, "Put pressure it's the cult," and "sell your soul and you won't get pressured." Id. at ¶¶7–8 (citing Dkt. No. 1 at ¶¶15–17). The plaintiff alleged that the next day, Dorn stopped in front of a nearby cell as he was dispensing medication and said, "Put pressure on Mr. Thomas down there he is a sex offender." Id. at ¶8 (citing Dkt. No. 1 at ¶¶16–17). He alleged that Dorn continued to another cell and said, "The reason why he's getting pressured because [*sic*] the cult wants his soul." Id. at ¶9 (citing Dkt. No. 1 at ¶17). Dorn denies making any of these statements but does not object to the court assuming their truth for the purpose of summary judgment only. Id. at page 2 n.2.

On August 1, 2019, Stephenson was working second shift in the Restricted Housing Unit (RHU) and was assigned to the lower B-range. Id. at ¶10. The plaintiff alleged that, as Stephenson was dispensing medication, Stephenson stated, "Pressure Mr. Thomas he's a bisexual guy, he's waiting to get released to go to a gay bar." Id. at ¶11 (citing Dkt. No. 1 at ¶8). The next day, Stephenson again was working in the RHU and was assigned to the lower B-range. Id. at ¶12. As he was bringing inmates outside for recreation, he allegedly said to the plaintiff, "You mad because cult is pressuring you and your [*sic*] a bisexual guy you shouldn't showed." Id. at ¶13 (citing Dkt. No. 1 at ¶11). The plaintiff alleged that Stephenson then laughed and said, "Your [*sic*] gonna go to a gay bar." Id. Like Dorn, Stepheson denies making any of these statements but does not object

to the court assuming their truth for the purpose of summary judgment. Id. at page 3 n.3.

The plaintiff alleged that on August 29, 2019, Dorn was working first shift in the RHU. Id. at ¶14. According to the defendants, Dorn was not working the morning shift in the RHU on that date. Id. at ¶15; Dkt. No. 28-1. The plaintiff asserted that on August 29, 2019, he was housed in the RHU on lower B-range. Dkt. No. 27 at ¶16 (citing Dkt. No. 1 at ¶18). But the plaintiff's bed-assignment records show he was housed in C-range on that date. Id.; Dkt. No. 28-2 at 1. The plaintiff alleged that around 9:30 a.m. Dorn yelled, "You and your Mom are sex offenders it's a curse." Id. at ¶17 (citing Dkt. No. 1 at ¶18). He alleged that Dorn further stated, "Your [*sic*] not going to (GP) General Population there's a hit on you." Id. at ¶18 (citing Dkt. No. 1 at ¶19).

On October 11, 2019, defendant Lehman worked second shift in the RHU on the lower C-range, where the plaintiff was housed. Id. at ¶¶19–20; Dkt. No. 28-2. The plaintiff alleges that Lehman stopped at cells C103 and C102 and said, "Mr. Thomas is a gay bear." Dkt. No. 27 at ¶21 (citing Dkt. No. 1 at ¶21). The plaintiff further alleged that Lehman stopped in front of cell C106 and said, "pressure Mr. Thomas, he's a gayster." Id. at ¶22 (citing Dkt. No. 1 at ¶21). He alleged that Lehman then moved to different cells and stated, "Put pressure on Thomas he's a bi-guy." Id. at ¶23 (citing Dkt. No. 1 ¶21). Lehman denies making any of these statements but does not object to the court assuming their truth for the purpose of summary judgment. Id. at page 4 n.4.

B.    Plaintiff's Deposition

The following facts are taken from the plaintiff's July 12, 2021 deposition. Dkt. No. 24. The plaintiff testified that in October 2017, his neighbor Alexander Robinson tried to persuade him to join a cult. Dkt. No. 27 at ¶24 (citing Dkt. No. 24 at 15). The plaintiff believed Robinson communicated the information about cult membership to inmates and staff at Waupun via voodoo, *i.e.*, mind control. Id. at ¶25 (citing Dkt. No. 24 at 16–17). Robinson never visited, called or wrote letters or emails to the plaintiff while he was at Waupun. Id. at ¶26 (citing Dkt. No. 24 at 21–22). The plaintiff reported to psychological staff at Waupun that Robinson was subjecting him to voodoo or mind control. Id. at ¶27 (citing Dkt. No. 24 at 20). He also reported to medical staff at Waupun that he had shortness of breath, a warming sensation in his body and a rash that he believed Robinson had caused using voodoo. Id. at ¶28 (citing Dkt. No. 24 at 21, 25).

The plaintiff arrived at Waupun from Dodge Correctional Institution on June 11, 2019. Id. at ¶30; Dkt. No. 28-2. Before entering Waupun in June 2019, the plaintiff had no contact with any of the defendants. Dkt. No. 27 at ¶29 (citing Dkt. No. 24 at 26). The plaintiff testified that he was harassed by persons incarcerated in the North Program the first day he arrived at Waupun. Id. at ¶32 (citing Dkt. No. 24 at 28–29). He testified that, even though no one at Waupun knew him, "It felt like everything was being controlled and everything was being exposed about [him]." Id. at ¶33 (citing Dkt. No. 24 at 29). He spent only one day in general population at Waupun before being moved to the RHU. Id. at ¶31 (citing Dkt. No. 24 at 28); see Dkt. No. 28-2.

The plaintiff testified that on July 24, 2019, the first date on which Dorn allegedly made comments to him, Dorn was eight cells away. Dkt. No. 27 at ¶34 (citing Dkt. No. 24 at 32–34). He testified that he did not believe Dorn had any reason or motivation to say such things about the plaintiff. Id. at ¶35 (citing Dkt. No. 24 at 35, 39). Instead, the plaintiff believed that Dorn was being controlled by Robinson via voodoo because Robinson wanted the plaintiff to sell his soul and make his mom into a sex slave. Id. The plaintiff testified that after Dorn's alleged comments, unknown inmates a few cells down from him threatened to sexually assault him, but nothing ever happened. Id. at ¶36 (citing Dkt. No. 24 at 41). He testified that nothing happened after Dorn allegedly told the person in Cell 104 to "put pressure" on the plaintiff and called him a sex offender on July 25, 2019. Id. at ¶37 (citing Dkt. No. 24 at 42–43). Nor did anything happen to the plaintiff in August 2019 after Dorn moved to another cell and allegedly commented to the person in that cell about the plaintiff "selling his soul to the cult." Id. at ¶38 (citing Dkt. No. 24 at 43–44). The plaintiff testified that after Dorn told him there was a hit on him, he felt the entire institution was threatening him, and he wanted to stay in the RHU. Id. at ¶¶39–40 (citing Dkt. No. 24 at 45–47). He testified that Dorn did not make any comments to him after August 29, 2019. Id. at ¶41 (citing Dkt. No. 24 at 49).

The plaintiff testified that on August 1, 2019, when Stephenson allegedly made the comments about the plaintiff going to a gay bar, the plaintiff was seven cells away. Id. at ¶¶42–43 (citing Dkt. No. 24 at 50–51). The plaintiff testified that Stephenson had no reason or motive to make such comments but made them because Robinson was manipulating or controlling Stephenson with voodoo. Id.

at ¶44 (citing Dkt. No. 24 at 51–52). The plaintiff testified that after Stephenson allegedly made comments about the plaintiff being bisexual, going to a gay bar and feeling "cult pressure," he thought other incarcerated persons may have heard those alleged comments, because other incarcerated persons threatened to spit or throw "piss" on him. Id. at ¶46 (citing Dkt. No. 24 at 52–55). He testified that nothing happened to him because he was "protected" in the RHU. Id. The plaintiff testified that Stephenson made no further comments to or about him after August 2, 2019. Id. at ¶47 (citing Dkt. No. 24 at 55).

The plaintiff testified that defendant Lehman allegedly made his comments to the plaintiff about being a "gay bear" and a "gayster" because Robinson was controlling him through voodoo. Id. at ¶¶49–50 (citing Dkt. No. 24 at 57–58). The plaintiff testified that the first time he'd ever seen Lehman was on October 11, 2019, the date of the alleged comments. Id. at ¶48 (citing Dkt. No. 24 at 56). The plaintiff testified that other incarcerated persons spit on him during recreation time on October 12, 2019 and that it must have been because of what Lehman allegedly said. Id. at ¶51 (citing Dkt. No. 24 at 59). The plaintiff testified that he had no issues with Lehman after October 11, 2019. Id. at ¶52 (citing Dkt. No. 24 at 60).

The plaintiff testified that no inmate at Waupun ever physically injured him. Id. at ¶53 (citing Dkt. No. 24 at 40, 43 & 60). He testified that he believed he was in imminent danger because of the alleged statements the defendants made to other inmates. Id. at ¶54 (citing Dkt. No. 24 at 60). Despite his concerns, the plaintiff said he "was kept safe from harm at Waupun." Id. at ¶55 (citing Dkt. No. 24 at 60). He testified that the only physical symptoms he suffered at Waupun

were rashes, which he believed Robinson caused by using a voodoo doll. Id. at ¶57 (citing Dkt. No. 24 at 68). The plaintiff testified that he was sane and intelligent, was not suicidal or homicidal and had no mental health issues. Id. at ¶56 (citing Dkt. No 24 at 68). He testified that Robinson continued to use voodoo on him. Id. at ¶58 (citing Dkt. No. 24 at 61, 69). He alleged that while he was at the Kenosha County Detention Center in July 2021, incarcerated persons and staff there made the same comments to him as the inmates and staff at Waupun. Id. at ¶60 (citing Dkt. No. 24 at 69). He testified that the only way the Kenosha County inmates and staff could know the same information was through Robinson. Id.

C.     Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to

return a verdict in its favor. <u>Brummett v. Sinclair Broad. Grp., Inc.</u>, 414 F.3d 686, 692 (7th Cir. 2005).

D.     <u>Analysis</u>[2]

Under the Eighth Amendment, a state may not subject prisoners "to conditions of confinement amounting to cruel and unusual punishment." <u>Giles v. Godinez</u>, 914 F.3d 1040, 1051 (7th Cir. 2019) (citing <u>Rhodes v. Chapman</u>, 452 U.S. 337, 345–47 (1981)). The Supreme Court has clarified, however, that only "extreme deprivations" will amount to cruel and unusual conditions of confinement. <u>Id.</u> (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992)). The court must judge the alleged conditions "in accordance with contemporary standards of decency." <u>Id.</u> (citing <u>Hudson</u>, 503 U.S. at 8, and <u>Rhodes</u>, 452 U.S. at 346).

An Eighth Amendment claim consists of both objective and subjective components. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). In the context of a conditions-of-confinement claim, a prisoner must show that he has been deprived of "'the minimal civilized measure of life's necessities.'" <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991) (quoting <u>Rhodes</u>, 452 U.S. at 347). The subjective component requires a prisoner to demonstrate that prison officials acted with the requisite intent, that is, that the officials acted with "deliberate indifference" to a

_____

[2] The plaintiff's testimony that Robinson used voodoo or mind-control to manipulate the defendants into making their comments is factually frivolous. <u>See</u> <u>Felton v. City of Chi.</u>, 827 F.3d 632, 635 (7th Cir. 2016) (quoting <u>Denton v. Hernandez</u>, 504 U.S. 25, 32–33 (1992)) (explaining that allegations are factually frivolous when "they are 'clearly baseless,' 'fanciful,' 'fantastic,' 'delusional,' 'irrational,' or 'wholly incredible.'"). Although the defendants deny making those comments, dkt. no. 27 nn.2–4, none of them filed a sworn declaration contesting the allegations. The defendants instead assert that "the Court can assume the truth of the allegations" for purposes of summary judgment. <u>Id.</u> The court therefore analyzes the plaintiff's claims utilizing that assumption.

13

substantial risk that the prisoner would suffer serious harm. <u>Farmer</u>, 511 U.S. at 834; <u>Wilson</u>, 501 U.S. at 303.

Except in exceptional circumstances, verbal abuse or harassment from prison officials does not constitute cruel and unusual punishment. <u>See</u> <u>Beal v. Foster</u>, 803 F.3d 356, 357–58 (7th Cir. 2015); <u>DeWalt v. Carter</u>, 224 F.3d 607, 612 (7th Cir. 2000), <u>abrogated in part on different grounds by</u> <u>Savory v. Cannon</u>, 947 F.3d 409, 423–24 (7th Cir. 2020) (<i>en banc</i>). But when the comments are repeated and of a certain nature, they may increase the plaintiff's risk of physical or psychological harm from fellow inmates. <u>See</u> <u>Beal</u>, 803 F.3d at 358–59. For example, statements by correctional officers made in front of other incarcerated persons about a plaintiff's sexual orientation could increase that plaintiff's risk of sexual assault or harassment. <u>Id.</u> In that scenario, ongoing verbal harassment may support an Eighth Amendment claim. <u>Id.</u>

The court allowed the plaintiff to proceed on a claim that the defendants' statements "were sexual in nature," made over a four-month period and stated in front of other incarcerated persons "for the apparent purpose of inciting the inmates to 'put pressure' on the plaintiff." Dkt. No. 15 at 8 (citing <u>Beal</u>, 803 F.3d at 358–59). The court noted that those statements, like those in <u>Beal</u>, could have "increased the plaintiff's risk of harm (physical or psychological) from other inmates." <u>Id.</u> The court concluded that the plaintiff's allegations sufficed to state an Eighth Amendment cruel and unusual punishment claim against the defendants. <u>Id.</u> at 8–9.

The undisputed facts taken from the defendants' summary judgment materials and the plaintiff's deposition show, however, that the plaintiff's claims

fail as a matter of law. There is no evidence that the plaintiff suffered any physical harm from the defendants' alleged comments. The plaintiff testified that no other incarcerated person ever physically harmed him, although he also testified that other incarcerated persons spit on him on one occasion. Dkt. No. 24 at 59–60. It is not clear whether the individuals who allegedly spit on the plaintiff did so because of the defendants' comments, and the defendants argue that the incarcerated persons' actions were unrelated to the alleged comments. Dkt. No. 26 at 10 (citing Roe v. Elyea, 631 F.3d 843, 863–64 (7th Cir. 2011)). Even assuming the comments and the alleged spitting were related, other individuals spitting on the plaintiff on one occasion does not constitute a serious harm entitling him to compensation under the Eighth Amendment. See Lord v. Beahm, 952 F.3d 902, 905 (7th Cir. 2020) (explaining that physical injuries "consist[ing] only of minor scratches, quickly and easily treated with a gauze bandage" did not constitute compensable harm under §1983); DeMallory v. Cullen, 855 F.2d 442, 444 (7th Cir. 1988) (affirming district court's conclusion that "a correctional officer spitting upon a prisoner does not rise to the level of a constitutional violation" (internal quotation marks omitted)). Although the plaintiff testified that he feared that the defendants' comments put him at risk of further physical harm, he concedes that no such harm ever occurred. The plaintiff does not seek relief from a risk of *future* harm, and his Eighth Amendment claim "cannot be based on a risk that never came to pass." Henry v. Deshler, No. 20-2185, 2021

WL 2838400, at *2 (7th Cir. July 8, 2021) (citing <u>Lord</u>, 952 F.3d at 905) (internal citations omitted).[3]

That leaves only the plaintiff's claim that he suffered psychological harm from the defendants' comments. <u>See</u> <u>Beal</u>, 803 F.3d at 358–59 (explaining that psychological harm can be the basis for an Eighth Amendment claim); <u>Doe v. Welborn</u>, 110 F.3d 520, 524 (7th Cir. 1997) (quoting <u>Babcock v. White</u>, 102 F.3d 267, 273 (7th Cir. 1996)) ("The Constitution 'does not countenance psychological torture merely because it fails to inflict physical injury.'"). The Court of Appeals for the Seventh Circuit has clarified that to sustain an Eighth Amendment claim based on psychological harm where no physical injury occurs, the plaintiff must demonstrate "malicious and sadistic behavior" or "egregious conduct" that caused the psychological harm. <u>Id.</u> at 273 (citing <u>Hudson</u>, 503 U.S. at 16). In other words, the plaintiff must demonstrate that the comments were "extreme" and deprived him of "the minimal civilized measure of life's necessities." <u>Wilson</u>, 501 U.S. at 298; <u>Hudson</u>, 503 U.S. at 9; <u>see</u> <u>Babcock</u>, 102 F.3d at 273.

The plaintiff's claims do not meet this standard. The plaintiff testified that, under Robinson's control, the defendants called him "gay," "gay bear" and "gayster"; implied he was gay or bisexual; suggested there was a hit on him and told other inmates to "pressure" him to sell his soul to a cult. Although inappropriate and harassing, these comments do not meet the "extreme"

---

[3] The plaintiff testified that he experienced skin rashes, but he said it was Robinson who caused those rashes via voodoo. Dkt. No. 24 at 21, 25, 68. This allegation, like those about Robinson controlling the defendants, is frivolous. It also is irrelevant because it alleges malicious conduct by a non-defendant who is not a state actor (Robinson).

threshold required to sustain an Eighth Amendment claim. See Hudson, 503 U.S. at 16 (Blackmun, J., concurring) (citing Wisniewski v. Kennard, 901 F.2d 1276, 1277 (5th Cir. 1990)) (offering a prison guard "placing a revolver in [an] inmate's mouth and threatening to blow [the] prisoner's head off" as the kind of "extreme" harassment that could form the basis for an Eighth Amendment claim based on psychological harm); Beal, 803 F.3d at 357 (analogizing verbal harassment sufficient to state an Eighth Amendment claim to "physical brutalization of prisoners by guards"). Nor is there any evidence in the record that the defendants made these comments maliciously or sadistically to cause harm. The plaintiff testified that he did not believe that the defendants had such a motive but instead made their comments because they were being controlled by Richardson. Dkt. No. 24 at 35, 39, 51–52, 57. Without any evidence showing the requisite intent by the defendants, no reasonable jury could conclude that the defendants' comments were egregious, malicious or sadistic.

Even if the alleged comments satisfied the Eighth Amendment standard, there is no evidence that the plaintiff suffered any psychological harm. The plaintiff testified that he chose to stay in the RHU because he felt threatened by the entire prison. Dkt. No. 24 at 45–47. But there is no evidence that he required psychological counseling, medication or other treatment because of the alleged comments. See Beal, 803 F.3d at 358–39 (noting prisoner's allegations that he sought "psych service" through the prison after allegedly being sexually harassed). Nor is there any evidence that the plaintiff suffered long-term anxiety, stress or other psychological symptoms because of the defendants' comments. The only evidence that the plaintiff sought counseling while at Waupun is his

testimony that he told Waupun staff about Robinson attempting to pressure him using voodoo. Dkt. No. 24 at 19–20. He did not testify that any inmates ever "pressured" him to join the alleged cult, as the defendants allegedly encouraged them to do. Without evidence that the defendants' conduct caused him psychological harm, the plaintiff cannot defeat the defendants' motion for summary judgment. See Jackson v. Jackson, No. 20-2705, 2021 WL 4955615, at *2 (7th Cir. Oct. 26, 2021) (citing Lord, 952 F.3d at 905) (upholding summary judgment for defendant on claim alleging deliberate indifference to risk of psychological harm because plaintiff "supplied no evidence that he suffered any psychological harm as a result of being denied protective custody").

Not only does the plaintiff's claim that he suffered psychological harm fail as a matter of law but, like his claim that he suffered physical injury, it is not compensable. The plaintiff has been released from Waupun since filing the complaint, and he does not suggest he is likely to be reincarcerated there. The plaintiff's lawsuit does not (and cannot) seek compensation for future harm because there is no suggestion any will occur. The plaintiff seeks relief only for the risk of past harm that never occurred. Because there is no evidence that the plaintiff suffered any psychological harm from the defendants' comments, there is nothing for which he can be compensated. See Babcock, 102 F.3d at 272 (citing Carey v. Piphus, 435 U.S. 247, 258–59 (1978)) (concluding prisoner's claim that he suffered psychological harm when officials failed "to prevent his exposure to risk of harm . . . does not entitle [the prisoner] to monetary compensation").

In addition to damages, the plaintiff seeks declaratory relief and an injunction ordering the defendants not to have any contact with him at any

18

institution where he resides. Dkt. No. 1 at 7. But as noted, the plaintiff has been released from Waupun and does not allege that he is likely to return there. Nor does he suggest he is likely to encounter the defendants again. His requests for injunctive and declaratory relief are moot. See Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011) (concluding that prayer for injunctive relief was moot because plaintiff was transferred to a different facility and failed to allege "a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains"); Pearson v. Welborn, 471 F.3d 732, 743 (7th Cir. 2006) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 103–04 (1983), and Davis v. District of Columbia, 158 F.3d 1342, 1348 (D.C. Cir. 1998)) (same for inmate seeking declaratory judgment).

Even if the plaintiff's request for relief was not moot, declaratory or injunctive relief under §1983 "is only proper if there is a continuing violation of federal law." Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)); see Pearson, 471 F.3d at 743. The plaintiff does not allege an ongoing violation of his rights. He alleges only that the defendants harmed him in the past. The plaintiff testified that he had no issues with the defendants after their alleged comments. Dkt. No. 24 at 49, 55, 50. Because the plaintiff does not allege a continuing violation of his rights, neither injunctive nor declaratory relief would be available to him even if his claims had merit.

The undisputed facts show that, even if the defendants made the comments the plaintiff alleges they made, the plaintiff suffered no physical or psychological harm from those comments. No reasonable jury could conclude that the

defendants' comments constituted cruel and unusual punishment in violation of the plaintiff's Eighth Amendment rights. Even if the plaintiff's claims had merit, he produced no evidence showing he suffered past harm, continues to suffer harm or will suffer future harm. He is not entitled to relief. The court will grant the defendants' motion for summary judgment and dismiss the case.

### III. Conclusion

The court **GRANTS** the defendants' motion for summary judgment. Dkt. No. 25.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry

20

of the judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 31st day of December, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**